IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 01-775

2001 MT 259

_____

**OPINION AND ORDER**

JULIAN LOUIS GONZALES,

Petitioner,

v.

MIKE MAHONEY, Warden of Montana

State Prison; JUDICIAL DISTRICT COURT;

and THE STATE OF MONTANA,

Respondents.

_____

¶1 Julian Louis Gonzales has filed a petition for writ of habeas corpus asserting that his detention on a probation revocation warrant violates double jeopardy protections and § 46-23-1012, MCA (2001). On November 2, 2001, the Court granted Gonzales' motion to proceed *in forma pauperis,* and ordered the Respondents to file a response, which has been filed. Respondents' supplemental response to the petition has also been filed.

¶2 According to his petition, Gonzales received five suspended sentences for offenses he committed between 1996 and 1998. In 2000, Gonzales was arrested for probation violations pursuant to a bench warrant. He was not afforded a hearing within 36 hours of

his arrest, as required by § 46-23-1012(4), MCA (1999). Gonzales' probation was then revoked, and he was sentenced to various terms of incarceration at the Montana State Prison.

¶3 Respondents acknowledge that Gonzales' revocation in 2000 was void pursuant to *State v. Goebel*, 2001 MT 73, 305 Mont. 53, 31 P.3d 335, and *State v. Giddings*, 2001 MT 76, 305 Mont. 74, 29 P.3d 475. Following this Court's order denying rehearing in *State v. Goebel and State v. Giddings*, 2001 MT 155, 306 Mont. 83, 31 P.3d 340, probation revocation proceedings in Gonzales' five cases were reinitiated. Three bench warrants were served upon Gonzales on October 11, 2001, and two more on October 22, 2001. Gonzales was transferred from Montana State Prison to the Great Falls Regional Prison on November 27, 2001, in anticipation of further revocation proceedings, and a hearing on all five causes has been set for December 13, 2001.

¶4 Gonzales asserts that he has not been arraigned, had a hearing or otherwise made any court appearance since he was served with the new warrant. He asserts that the State and District Court intend to conduct another revocation hearing on the same allegations which were the basis of the original revocation proceeding, which he contends violates the double jeopardy provisions of the Montana Constitution. Further, he contends that the District Court is without jurisdiction to conduct the revocation proceeding because the provisions of § 46-23-1012, MCA (2001), have not been complied with.

¶5 In response to Gonzales' double jeopardy claim, Respondents offer that "[c]ontrary to Petitioner's argument, this Court in *Giddings* specifically authorized the State to proceed with a new revocation proceeding, and to hold inmates at a state facility pursuant to a bench warrant until the Petitioner was transported for further proceeding," and that, therefore, Petitioner's incarceration is legal.

¶6 In *State v. Oppelt* (1979), 184 Mont. 48, 601 P.2d 394, a petition to revoke Oppelt's probationary sentence was first dismissed, then refiled based upon the same factual allegations. Oppelt challenged the second petition, contending it subjected him to double jeopardy under both the United States and Montana Constitutions. First, the Court discussed the applicability of double jeopardy provisions to sentence revocation proceedings generally:

> Defendant contends that revocation of the suspended sentence enhances his punishment and thus subjects him to double jeopardy. We disagree. Even though a

defendant must live with the conditions of probation throughout the period of suspension and even though he must serve the entire sentence if the suspension is revoked, there is no double jeopardy. . . .

. . .

"[R]evocation of suspension of a sentence does not constitute a second punishment for the same offense. A defendant under a suspended sentence lives with the knowledge that 'a fixed sentence for a definite term hangs over him.' [Citations omitted.] The defendant's subsequent conduct, not his original offense, forms the basis of revocation and reinstates the original sentence. Petitioner is not being punished for the same offense." *State v. Ratzlaff*, 564 P.2d at 1316. See also *Paul v. State* (Alaska 1977), 560 P.2d 754; 22 C.J.S. Criminal Law §§ 239, p. 623.

*Oppelt,* 184 Mont. at 51-53, 601 P.2d at 396-97. The Court then addressed the double jeopardy implications of the second revocation petition filed against Oppelt:

Defendant next asserts, and we will assume, that both proceedings to revoke the suspended sentence were based on the May, 1977, convictions. His argument that this subjects him to double jeopardy fails because it ignores the basic nature of proceedings to revoke a suspended sentence.

. . .

"Because a revocation proceeding is not a criminal adjudication, does not require proof of a criminal offense, does not impose punishment for any new offense, and is an act in the performance of the duty of judicial supervision of probationary liberty . . . the Double Jeopardy Clause . . . is [not] applicable." State v. Eckley, 579 P.2d at 293.

In this case, the first petition was dismissed without any determination on the merits. Under these circumstances and in recognition of the essence of revocation proceedings, the prohibitions against double jeopardy do not preclude the state from filing a second petition alleging the same facts. See State v. Rios (1977), 114 Ariz. 505, 562 P.2d 385. We recognize there may be a limit on how many times the same operative facts may be used as a basis for a petition to revoke. However, we do not reach the issue of the effect of a dismissal on the merits on a second petition based on the same facts. [Citations omitted.]

*Oppelt, 184 Mont. at 53-54, 601 P.2d at 397-98.*

¶7 The question left open by the *Oppelt* Court-whether the facts alleged in a revocation petition which is dismissed on its merits can be the basis of a second petition to revoke-is again not at issue here. The first revocation petition filed against Gonzales was voided under our holding in *Giddings* without a determination regarding the merits of that petition. Thus, pursuant to *Oppelt*, the State's second revocation petition against Gonzales alleging the same facts does not violate the prohibition against double jeopardy under the Montana Constitution.

¶8 In the order denying rehearing in *Goebel and Giddings*, we held that the State must "proceed anew as if no District Court proceedings had occurred." *Goebel and Giddings*, ¶ 30. Moreover, we held that to proceed anew, the State and District Court must follow the procedure outlined in § 46-23-1012, MCA (2001). Gonzales alleges that this statutory procedure has not been followed. He asserts that he has not appeared before a magistrate to set bail, pursuant to § 46-23-1012(3)(c), MCA, nor had an intervention hearing pursuant to § 46-23-1012(3)(b), MCA, or a revocation hearing under § 46-23-1012(5), MCA, which references the procedure set forth in § 46-18-203, MCA. Thus, Gonzales contends his incarceration is unlawful.

¶9 Respondents offer that Gonzales' reading of the statutes at issue is incorrect. They explain that § 46-23-1012, MCA, authorizes two distinct methods of commencing revocation proceedings, including a formal proceeding outlined in § 46-23-1012(1), MCA, and § 46-18-203, MCA, and an abbreviated proceeding initiated by detention by the probation and parole office, known as the probation violator prison diversion program, and set forth in § 46-23-1012(3), (4) and (5), MCA. A diversion revocation proceeding initiated by a probation and parole officer under these provisions may be converted to a formal revocation proceeding pursuant to §46-23-1012(5), MCA.

¶10 Respondents argue that the time requirements and procedures which Gonzales alleges were violated relate to the diversion revocation proceeding, not to a formal proceeding. Respondents explain that, pursuant to § 46-18-203(3), MCA, bail was set for Gonzales in the new bench warrants issued by the District Court, and the time requirement that applies to the hearing under a formal proceeding is set forth in § 46-18-203(4), MCA, requiring an offender to be brought before the court "without unnecessary delay." Respondents argue that the delay incurred in returning Gonzales to Cascade County and scheduling his appearance in the District Court was necessary in light of the 65 Cascade County

offenders who are being processed for new revocation appearances, and the 75 felony jury trials set per month in that county.

¶11 Gonzales has not asserted that the delay in his appearance before the District Court since service of the new bench warrants violates the "unnecessary delay" requirement of § 46-18-203, MCA, and therefore, we do not reach that issue here. However, Respondents correctly argue that the statute contemplates dual revocation proceedings, and that a formal proceeding initiated pursuant to § 46-23-1012(1), MCA, and § 46-18-203, MCA, is not subject to the time and procedural requirements set forth in § 46-23-1012(3), (4), and (5), MCA. Consequently, Gonzales' claims must fail. Therefore,

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.

The Clerk is directed to mail copies hereof to petitioner personally and to counsel of record for respondent.

DATED this 12th day of December, 2001.

/S/ KARLA M. GRAY

/S/ JIM RICE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART