No. 02-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 315

STATE OF MONTANA,

      Plaintiff and Respondent,

    v.

LESLIE JAMES PEDERSEN,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, ADC 00-398-2
The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Vincent van der Hagen, Deputy Public Defender, Great Falls, Montana

      For Respondent:

        Honorable Mike McGrath, Montana Attorney General, C. Mark Fowler, Assistant Attorney General, Helena, Montana, Brant S. Light, Cascade County Attorney, Great Falls, Montana


        Submitted on Briefs:  April 4, 2003

        Decided:  November 18, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Leslie James Pedersen appeals the District Court's revocation of his suspended sentence. We affirm.

## ISSUES

¶2     1. At a hearing on the revocation of his suspended sentence, were Pedersen's due process rights violated when the District Court denied his request for a continuance and allowed the State to introduce drug test results, although drug use had not been alleged before the hearing?

¶3     2. Did the District Court abuse its discretion when it permitted the State to present evidence during the dispositional phase of the revocation hearing?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On October 22, 2001, Pedersen pled guilty to Criminal Possession of Dangerous Drugs, a felony, § 45-9-102, MCA (1999), pursuant to a Plea Agreement. The State agreed to dismiss three felony counts of Accountability for Criminal Sale of Dangerous Drugs, and to recommend a five-year suspended sentence. The District Court followed the Plea Agreement, sentencing Pedersen to five years, and suspending all but the thirty-three days he had already served.

¶5     Among other conditions in the Plea Agreement, Pedersen agreed that he would not use alcohol; would not use or possess illegal drugs or drug paraphernalia; would not own or be in control of any firearms or deadly weapons; would submit to random drug and alcohol

testing; and would obtain a chemical dependency evaluation. These conditions were incorporated into his sentence when he appeared in District Court on December 7, 2001. When he signed the rules of his probation on December 10, 2001, Pedersen also agreed that he would not travel outside of Cascade County without permission, and that he would report any arrests to his Probation Officer within 72 hours.

¶6 Less than a month later, Pedersen was arrested in Kalispell for misdemeanor assault, carrying a concealed weapon, misdemeanor theft, and traffic offenses. His Probation Officer informed the District Court that he believed Pedersen's behavior was not in accordance with the terms of the Plea Agreement and rules of probation and that the District Court would be justified in revoking the suspended sentence.

¶7 On May 13, 2002, the District Court held a hearing at which Pedersen and Probation Officer Michael Price testified. The District Court found that Pedersen had committed the alleged violations and revoked his suspended sentence. Pedersen appeals.

**STANDARD OF REVIEW**

¶8 When asked to revoke probation or a suspended sentence, the issue before the District Court is whether it "is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." *State v. Senn*, 2003 MT 52, ¶ 19, 314 Mont. 348, ¶ 19, 66 P.3d 288, ¶ 19, quoting *State v. Averill*, 2001 MT 161, ¶ 22, 306 Mont. 106, ¶ 22, 30 P.3d 1059, ¶ 22. We review the District Court's decision to revoke a

3

suspended sentence to determine if it was supported by a preponderance of the evidence, and if so, whether the District Court abused its discretion. *Senn*, ¶ 19.

## DISCUSSION

### ISSUE ONE

¶9     At a hearing on the revocation of his suspended sentence, were Pedersen's due process rights violated when the District Court denied his request for a continuance and allowed the State to introduce drug test results, although drug use had not been alleged before the hearing?

¶10     In his violation report, Pedersen's Probation Officer alleged that Pedersen violated four of his probation conditions – travel, alcohol, weapons, and laws. He supplied evidence of each alleged violation in support of his belief that Pedersen's suspended sentence should be revoked. He stated that Pedersen was pulled over by a police officer while driving outside of his district without permission, and that the officer found him in possession of brass knuckles. He further advised that Pedersen was arrested and charged with Possession of a Concealed Weapon, Assault, Theft, No Insurance, and a Red Light violation, and that Pedersen blew a .043 on a Breathalyzer test.

¶11     At the hearing, Pedersen admitted he left Cascade County without permission and with no good excuse. He also admitted drinking beer, and that he knew at the time that it was a probation violation. He asserted his Fifth Amendment right to remain silent on the

4

accusations of weapons possession and whether he had obeyed all laws, since charges were still pending from the Kalispell arrest.

¶12 Price testified about the violations he alleged in his report and stated that Pedersen did not contact him within 72 hours of his arrest, as required by the terms of his probation. Price also brought up the results of drug tests he had administered to Pedersen since the time of the Kalispell arrest. Pedersen objected, claiming that he had not been informed of the test results and that he was not given notice that they would be entered into evidence. He requested a continuance to examine the results. The District Court overruled his objection and denied the request for a continuance.

¶13 Price then testified that Pedersen tested positive for methamphetamine after being arrested again on March 26, 2002. He added that Pedersen failed another drug test administered a week prior to the revocation hearing, and that, upon Pedersen's denial that he was using methamphetamine, Price sent the test to the Pre-Release Center, which confirmed the positive result. He testified that Pedersen had had additional probation violations, including drug use, possession of drug paraphernalia, and leaving Cascade County without permission on other occasions, and that Pedersen also had charges pending against him in Lewis and Clark County.

¶14 On recall, Pedersen admitted he had a drug problem, and that he had not gotten a chemical dependency evaluation as required under his probation agreement. He also

admitted using methamphetamine since his sentencing, but insisted the test results were wrong because he had not used the drug before each test.

¶15 The District Court found that Pedersen had violated the conditions as set forth in the violation report. It did not make a finding of fact regarding Pedersen's alleged drug use.

¶16 Pedersen argues that because he was unaware that the State would present any drug test results, and because he was denied the opportunity to challenge these results, he was denied his due process rights. The State argues that Pedersen was on actual notice that he had been given the two drug tests and failed to request the results, and that he failed to demonstrate that pre-hearing disclosure of the results would have affected the District Court's disposition. Pedersen replies that drug use was not mentioned as a reason for revocation in the pre-hearing documents, and he was not on notice that the State would introduce the drug test evidence; thus, he had no reason to request the results.

¶17 Once a court has determined that a probation violation has occurred, it is within the court's discretion to determine an appropriate action in response to the violation. Section 46-18-203(7), MCA. Barring an abuse of that discretion, this Court will not intervene. *Senn*, ¶ 19.

¶18 When an offender is brought before a judge on a petition for revocation, the offender must be advised of the allegations of the petition, the opportunity to appear and present evidence, the opportunity to question adverse witnesses, and the right to be represented by counsel. Section 46-18-203(4), MCA (2001). The prosecution must prove that there has

6

been a violation of the terms of the suspended sentence by a preponderance of the evidence. Section 46-18-203(6), MCA (2001). The judge may, at his or her discretion, revoke the suspended sentence. Section 46-18-203(7)(a)(iii), MCA (2001).

¶19    Pursuant to § 46-18-203(4), MCA, Pedersen was advised of the allegations of the petition for revocation, presented evidence, questioned the adverse witness, and was represented by counsel. Pedersen admitted to at least two violations, and the State presented uncontroverted evidence of two other violations which had been alleged in the pre-hearing documents; thus, the State met its burden of proving a violation of the suspended sentence conditions by a preponderance of the evidence, pursuant to § 46-18-203(6), MCA.

¶20    A revocation hearing is not a criminal trial, but rather a hearing to establish whether or not a probation violation has occurred. "The probationer already stands convicted of a crime no matter what the grounds for revocation may be, whether it is the commission of another crime or unauthorized travel." *In re Meidinger* (1975), 168 Mont. 7, 15, 539 P.2d 1185, 1190. As such, the revocation hearing is not subject to the Montana Rules of Evidence. M.R.Evid. 101(c)(3). However, a probation revocation hearing must be fundamentally fair. *Meidinger*, 168 Mont. at 15, 539 P.2d at 1190.

¶21    The minimum requirements of due process are extended to sentence revocation hearings. *State v. Nelson* (1987), 225 Mont. 215, 218, 731 P.2d 1299, 1302 (citing *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656). If a defendant is not notified of the State's intention to use alleged violations against him at a probation revocation

7

hearing, it is error for a trial judge to admit those alleged violations into evidence. *Nelson*, 225 Mont. at 219. However, a District Court's error may be harmless if its findings do not rely upon the erroneously admitted evidence. *Id.*

¶22 In light of *Nelson*, we conclude that because Pedersen was not notified in advance of the State's intention to use the drug violations against him at the revocation hearing, the District Court erred when it admitted the drug test results. However, we further conclude the error was harmless. The District Court's findings do not reference the drug test results, nor did the District Court rely upon them in revoking Pedersen's suspended sentence. Moreover, in light of the abundant evidence demonstrating Pedersen's violation of the four probation conditions considered by the Court, we conclude that the District Court did not abuse its discretion when it revoked Pedersen's suspended sentence.

## ISSUE TWO

¶23 Did the District Court abuse its discretion when it permitted the State to present evidence during the Dispositional phase of the revocation hearing?

¶24 Pedersen argues that he was entitled to a bifurcated hearing, with the evidentiary and dispositional phases separated into two distinct proceedings. Pedersen points out that, after he testified, the District Court announced that it was beginning the dispositional phase of the hearing and asked the State for its recommendations. At that point, the State called Price to the stand. Pedersen did not object to Price's being called, but did object when Price

8

offered additional substantive evidence to support the revocation. The District Court overruled Pedersen's objections.

¶25 Pedersen claims that revocation proceedings are divided into two discrete phases – evidentiary and dispositional – and that the only proper time for introducing or rebutting evidence is during the evidentiary phase of the proceeding. During the dispositional phase of the hearing, he argues, the District Court should have allowed Price to testify only to his recommendations for disposition.

¶26 We can find no Montana statutory or common law authority for Pedersen's contention that a revocation hearing must be bifurcated. District courts have wide latitude in controlling courtroom procedure. *State v. Snaric* (1993), 262 Mont. 62, 69, 862 P.2d 1175, 1179. Thus, we conclude that the District Court did not abuse its discretion when it allowed the State to present evidence after it moved into the dispositional phase of the revocation hearing.

**CONCLUSION**

¶27 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

9

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE